UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN ESCOBEDO, | } | |
| | } | |
| Plaintiff, | } | |
| VS. | } | CIVIL ACTION NO. H-06-3949 |
| | } | |
| TEXAS BOARD OF PARDONS AND | } | |
| PAROLES; agent TDCJ, *et al*, | } | |
| | } | |
| Defendants. | } | |

## OPINION & ORDER

Pending before the Court are Defendants Texas Board of Pardons and Paroles'
("TBPP") and Rissie L. Owens' ("Owens") Motion for Summary Judgment (Doc. 32), Plaintiff
John Escobedo's ("Escobedo") Amended Response in Opposition to Motion for Summary
Judgment (Doc. 51), Owens' Reply to Response in Opposition to Motion for Summary Judgment
(Doc. 52), and TBPP's Reply to Response in Opposition to Motion for Summary Judgment
(Doc. 60).  For the reasons explained below, the Court hereby ORDERS that Defendants TBPP
and Owen's Motion for Summary Judgment (Doc. 32) be GRANTED.

I.          **Background and Relevant Facts**

Escobedo's complaint alleges that he suffered from racial discrimination in
violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §2000e, et seq.  Owens is
presiding officer of the board of TBPP and in charge of choosing candidates for parole
commissioner openings.  Escobedo served as a board member of TBPP from 1989 to 1999, and
applied to become a parole commissioner when openings occurred in late 2004 and 2005.
Owens is African-American and Escobedo is Hispanic.  The three jobs at issue were filled with
two African-Americans and one Caucasian.

The Texas Constitution calls for the legislature of the state to establish a board of pardons and paroles.  TEX. CONSTITUTION, Art. IV Sec. 11(a).  Upon its recommendation, the Governor grants reprieves and commutations of punishment and pardons.  TEX. CONSTITUTION, Art. IV Sec. 11(b).  The TBPP also performs its traditional functions of granting or denying parole status, and revoking parole status.  Doc. 32 Exh. 8 at 4.

In 2003, TBPP went through a major reorganization.  Doc. 32 Exh. 8 at 4-5.  The Texas legislature created a new board of seven members, where previously there had been one of eighteen.  *Id*.  In that year, the TBPP reviewed 56,920 inmates for parole and approved 15,630 for release.  *Id*.  To take up the workload now that the board had reduced membership, the Texas legislature created eleven positions of parole commissioner.  *Id*.  Owens, as presiding officer of the new board, was the person who selected the new parole commissioners.  *Id*.

The Texas legislature had also provided that, in selecting the new parole commissioners, Owens was to give a "first look" at the ex-board members as of May 1, 2003.  Doc.32 Exh. 8 at 4-5.  Following this directive, Owens filled ten of the eleven new parole commissioner positions with those who had, as of May 1, 2003, been board members of TBPP.  *Id*.  The one exception was Brendolyn Johnson, an African-American female, whom Owens did not 're-hire' from Board member to parole commissioner, allegedly for insufficient work ethic.  *Id*.  Instead Owens hired Pamela Freeman, also an African-American female.  *Id*.  The racial composition of the new body of parole commissioners remained identical to that of the old board members, i.e. three African-Americans, six Caucasians, and two Hispanics.  *Id*.

Of the two Hispanics hired as parole commissioners, neither served long.  One, Daniel Guerra ("Guerra"), resigned on August 1, 2004.  Doc. 47 Exh. 12 at 1-3.  The other, Roy Garcia, resigned in December of 2004, but was re-hired in July of 2006.  Doc. 47 Exh. 11 at 4.

On December 27, 2004, a vacancy opened in Angleton for one of the parole commissioner positions.  Doc. 44 Exh. 7 at 12.  The position description asked for a bachelor's degree and ten years of criminal justice, business administration or public administration experience, as required minimum qualifications.  *Id*. at 3.  Escobedo applied.  Doc. 44  Exh. 5 at 1-16.  He made it onto a short-list of candidates whom Owens subsequently interviewed.  Doc. 44 Exh. 15 at 2. Owens awarded the position to Howard Thrasher ("Thrasher"), an African-American, and the TBPP's Director of Administration.  Doc. 32 Exh. 8 at 7.

On February 25, 2005, a parole commissioner vacancy opened in Huntsville for Doc. 45 Exh. 3 at 1-6.  Escobedo applied.  Doc. 45 Exh. 1 at 1-15.  Escobedo again made the short-list of candidates whom Owens interviewed.  Doc. 45 Exh. 10 at 3.  Owens awarded the position to Tom Fordyce ("Fordyce"), a Caucasian, and the retired director of Texas Department of Criminal Justice's ("TDCJ") Division of Agribusiness, Land and Minerals.  Doc. 32 Exh. 8 at 7.

On July 21, 2005, Escobedo filed a charge of discrimination with the EEOC, alleging discrimination based on national origin (Mexican), but giving a description of himself as Hispanic, suggesting racial discrimination.  Doc. 47 Exh. 1 at 2.  The discrimination allegedly occurred when Owens selected Thrasher for the Angleton position and Fordyce for the Huntsville position.  *Id*. at 2.  The EEOC sent Owens a notice of the charge requesting a response by August 22, 2005.  Doc. 47 Exh. 2 at 2.

On September 9, 2005, the EEOC investigation was ongoing when Escobedo applied for a third opening for parole commissioner in Gatesville.  Doc. 36 Exh. 1 at 1-11.  This time no interviews occurred because Owens exercised the available option under the Human Resources policy to appoint a candidate to parole commissioner without interviews.  Doc. 32

Exh. 8 at 8.  Owens explained that she appointed Elvis Hightower ("Hightower") to the position without an interview because he was a Board member and a qualified candidate.  *Id*.  Owens had worked alongside Hightower and formed a positive estimation of his capabilities.  *Id*.  Owens had also previously interviewed Hightower for another position.  *Id*.

Owens gave as her reasons for her decisions in hiring Thrasher, Fordyce and Hightower, rather than Escobedo, that they had demonstrated more recent knowledge of TBPP's complex system of ranking inmates for parole and that Escobedo had performed poorly at his interviews compared to them.  Doc. 32 Exh. 8 at 7-14.  According to Owens, Escobedo had considered himself a shoo-in to the positions due to his prior Board experience and acted "entitled," giving short answers to questions "as if he felt he did not need to answer them."  *Id*. at 13.  In contrast, Thrasher, Fordyce, and Hightower demonstrated professionalism and enthusiasm during their interviews.  *Id*.

Complex changes had occurred in parole decision-making since Escobedo had been a board member in 1999.  In 2001 the TBPP adopted parole guidelines that used a number of factors to create both a "risk assessment instrument" and "offense severity scale" in order to make parole decisions more predictable and uniform.  *Id*. at 9.  Furthermore, in 1999, 2002 and three times in 2004 the Board adopted revisions to policies concerning rehabilitation programs for inmates.  *Id*. at 10.  This created a variety of voting options as to different rehabilitation programs.  *Id*. at 10-11.  Additionally, after 1999, the TDCJ adopted a new inmate classification system that determined how they accrued good time, what educational and occupational opportunities were available to them, and housing assignments.  *Id*. at 12.  The inmate classification system would, therefore, impact parole decisions.  *Id*.

Thrasher, as director of administration at TBPP, had current experience with the

parole system.  Doc. 32 Exh. 6 at 5.  For example, one of his responsibilities was training new Board members as to the classification and disciplinary processes, the parole process and various voting options.  *Id*.

Fordyce, also, had current experience because as director of the Division of Agribusiness, Land and Minerals he was responsible for using a classification system for selecting inmates for work assignments similar to the system used to determine parole eligibility. Doc. 32 Exh. 7 at 4-5.  For example Fordyce had to select inmates for TDCJ's pork-processing plant, who would have access to sharp, 10-inch long knives.  *Id*.  To do this he relied on the classification system including institutional adjustment records, and criminal and vocational backgrounds.  *Id*.  No incidents occurred between inmates in the division.  *Id*.

`                    Lastly, Hightower had begun working as a Board member as of May 2004.  Doc. 32 Exh. 5 at 4.  He was immediately brought up to speed on current practice at TBPP at a training session in Austin.  *Id*.  Thus, by the time Owens appointed him to the position of parole commissioner, he had already been making parole decisions at TBPP for a year and three months.  *Id*.

Thrasher, Fordyce and Hightower, like Escobedo, also had over ten years of relevant experience for the position of parole commissioner.  Thrasher had worked in parole decision-making from 1981 until he was appointed to be a parole commissioner in 2004, a total of 23 years.  Doc. 32 Exh. 6 at 3-8.  He had gradually progressed upwards through different roles as parole officer, parole analyst, supervisor of parole analysts, and, finally, to director of administration at TBPP.  *Id*. at 3-9.

Fordyce worked as director of TDCJ's Division of Agribusiness, Land and Minerals from 1992 to 2005, a total of 13 years.  Doc. 32 Exh. 7 at 3.

Hightower served as chief correctional officer at TDCJ from 1984 to 1992, a total of 8 years.  Doc. 32 Exh. 5 at 3.  One of his responsibilities was serving as chief of unit classification, using factors such as severity of offense, educational background, and gang affiliation to determine housing and working assignments.  *Id*.  From 1992 to 1994, a total of 2 years, Hightower worked as assistant warden at the Smith Unit in Lamesa, Texas, where he was closely involved with rehabilitation programs.  *Id*.  Finally, from 1994 to 1999, a total of 5 years, he served as warden of the Hutchins State Jail in Dallas.  *Id*.  As assistant warden and warden, Hightower was closely involved with the parole decision-making process, communicating regularly with TBPP.  *Id*.

In comparison, Escobedo also had extensive parole decision-making experience.  He worked as a parole commissioner from 1985 to 1989, a total of 4 years.  Doc. 44 Exh. 5 at 5-6.  He also worked as a Board member at TBPP from 1989 to 1999, a total of ten years.  *Id*.

## II.          **Summary Judgment Standard**

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party

fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence

to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.        <u>Discussion</u>

A.        **§ 1981 and § 1983 Claims.**

Escobedo alleges violations of his First, Fifth and Fourteenth Amendment constitutional rights under § 1981 and § 1983. He brings these claims against Owens in her official capacity as presiding officer of the Board of TBPP. Under these claims, he seeks only damages, and neither injunctive nor prospective relief. Specifically, he argues that Owens violated his right to contract because of racial discrimination in violation of 42 U.S.C. § 1981 and §1983; that Owens denied him his right to due process and to equal protection in the hiring process guaranteed to him by

the Fourteenth Amendment of the U.S. Constitution in violation of § 1983,; and that Escobedo exercised his right to free speech when he complained of discrimination to the Equal Employment Opportunity Commission ("EEOC") and that, by retaliating for this complaint, Owens abridged Escobedo's First Amendment rights in violation of § 1983.

TBPP/Owens argue that TBPP enjoys Eleventh Amendment immunity, and that, consequently, Escobedo's § 1981 and § 1983 claims are barred. "The Texas Board of Pardon and Paroles, a division of the Texas Department of Criminal Justice, is cloaked with Eleventh Amendment immunity." *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995).  An award by a federal court of retrospective relief, i. e., damages, payable from the state treasury, is prohibited by the eleventh amendment even though the suit names a state official as the defendant. *Edelman v. Jordan*, 415 U.S. 651 (1974). *See Quern v. Jordan*, 440 U.S. 332 (1979).

However, the eleventh amendment is necessarily limited by the enforcement provisions of section five of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976).  Congress had power to authorize suits against state employers by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Unlike for Title VII suits, however, the Civil Rights Act of 1871 did not authorize § 1981 and § 1983 suits against state employers.   *Quern*, 440 U.S. at 342, *Edelman*, 415 U.S. at 675-77. Escobedo's claims under §1983 and §1981 are barred by the Eleventh Amendment as against TBPP and Owens as a state official.  On the other hand, his claims under Title VII may proceed despite TBPP/Owens' sovereign immunity.

**B.      Racial Discrimination Claim.**

Escobedo argues that Owens, in her official capacity as presiding officer of TBPP's Board, violated Title VII by improperly using racial discrimination in her decision not to hire Escobedo for the two parole commissioner openings in Angleton and Huntsville.  To prove his case, the plaintiff relies on circumstantial evidence.  It is therefore subject to the *McDonnell Douglas* burden shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v.  Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of racial discrimination.  *Davis*, 383 F.3d at 316.   To establish a *prima facie* case of racial discrimination, Escobedo must show the following: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

If Escobedo establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to TBPP/Owens to articulate a legitimate, non-discriminatory reason for their employment action.  *See Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  Their burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

If TBPP/Owens can articulate a reason that can support a finding that their actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out." *Id.* (citing *Hicks*, 509 U.S. at 510-511). Escobedo must then introduce evidence creating a jury question as to whether Owens/TBPP were motivated by discriminatory animus. A plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative). *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Although the intermediate evidentiary burdens shift back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment. *Id.* at 148-49.

Escobedo makes out a *prima facie* case because (1) he is Hispanic; (2) he was qualified for the Angleton and Hunstville positions, both times making the short-list to be interviewed by Owens; (3) he was not hired for either position; and (4) Thrasher, an African-American, was hired for the Angleton position, and Fordyce, a Caucasian, was hired for the Huntsville position. Escobedo has met his initial burden; the burden of production now shifts to TBPP/Owens to provide a "legitimate, nondiscriminatory reason" for not hiring Escobedo. In order to meet its burden, TBPP/Owens must provide both "clear and reasonably specific reasons" for their actions. *Okoye*, 245 F.3d at 513.

TBPP/Owens provide two reasons for preferring Thrasher and Fordyce to Escobedo. First, Thrasher and Fordyce performed better in their interviews. Second, they demonstrated more current experience with TBPP's parole system. An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007). Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment. *Id*.

Escobedo points outside this Circuit to *Chapman v. AI Transp.*, 229 F.3d 1012, 1035 (11th Cir. 2000) for guidance on how specific an employer's opinion of interview performance must be. *Id*. Although *Chapman* is not controlling precedent, it provides a useful illustration of why, in this case, TBPP/Owens were sufficiently specific. *Id*. In *Chapman*, the interviewer found that the plaintiff did not give sufficiently concise, on-point answers and was not sufficiently aggressive in asking questions about the employer. *Id*. That Owens found fault with Escobedo for the opposite reason, that he gave answers that were too short and acted entitled to the position, does not matter. What counts is that Owens, like the employer in *Chapman*, gave similarly specific details why Escobedo performed poorly at his interview.

The Court need not inquire into the correctness of personnel decisions, *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988), so the question of whether Owens drew the right conclusions from Escobedo's behavior, is not before it. Owens acted within the realm of reason, preferring Thrasher and Fordyce because they were enthusiastic and professional, to Escobedo, whose behavior might suggest he would be insubordinate in the

inferior role of parole commissioner to Owen's board.  Thus TBPP/Owens met its burden by explaining credibly their decision not to hire Escobedo in terms of interview performance.

Even if interview performance were not a sufficiently clear and specific reason, TBPP/Owens also provided evidence that Thrasher and Fordyce had current experience with TBPP's practice and procedures, unlike Escobedo.  If true, this would provide sufficient reason because TBPP's manner of operation was under constant revision as it refined a more uniform classification system of parolees, added rehabilitation options and took into consideration changes to the classification of inmates while in prison.   TBPP/Owens would be acting reasonably, and, therefore, credibly, if they acted on this lack of experience in not hiring Escobedo.

Thrasher makes a very strong case of current experience as he was in charge of training new Board members with TBPP's practice and procedure before his appointment to the position of parole commissioner.  Fordyce, too, however, makes a strong and credible case that he had more current experience than Escobedo because, as director of the agricultural division of TDCJ, he selected inmates for assignments using the inmate classification system that TBPP looked at when considering parole.  Escobedo, on the other hand, provides no evidence of knowledge of the inner workings of TDCJ and TBPP after 1999, when he stopped serving as a board member.  Given that after 1999, a whole new set of guidelines were adopted to classify parolees, new voting options were added several times for various rehabilitation programs, and a new classification system was adopted for inmates, TBPP/Owens have met their burden of proffering clear and specific reasons for the adverse employment action.

Escobedo argues that TBPP/Owens manufactured the need for current experience as a response to the EEOC investigation that occurred after Escobedo complained of racial

discrimination in July 2005.  As proof Escobedo points out that nowhere in the job postings does it mention that current experience was required for the parole commissioner positions.  He also dates Owens' statement that current experience was necessary to correspondence explaining her decision to the EEOC in August 2005, sometime after she had made the selections for the Angleton and Huntsville openings.  The job posting, however, only listed the minimum qualifications required; it did not need to state the most sought-after qualifications.  It is also possible that, when the best candidates displayed current experience, Owens made the decision to rely on this as a decisive factor.  For the Court to reason otherwise would impose an overly onerous and impractical burden on employers to specify all determinative causes for their hiring decisions before they even met the candidates or received their applications.  Certainly, Escobedo presents no direct or circumstantial evidence to refute the connection to be made between the fact that current experience was vital, if not actually necessary, and that the candidates chosen had current experience, whereas Escobedo did not.

Escobedo must now raise a genuine issue of material fact that TBPP/Owens discriminated against him.  *Okoye*, 245 F.3d at 513. (5th Cir. 2001).  Escobedo may meet this threshold by proving that an issue of material fact exists through circumstantial evidence, i.e., by  demonstrating that an issue exists that TBPP/Owens' proffered reason is a pretext for discrimination, or by providing direct evidence of discrimination.  *See id*.; *Hall v. Gillman Inc.,* 81 F.3d 35, 37 (5th Cir.1996).  As the Supreme Court acknowledged in *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient to infer discrimination. *Reeves,* 530 U.S.  at 148, (2000). The Supreme Court has also made clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the

defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id*.

Escobedo argues that, at the time he was turned down for the parole commissioner positions in Angleton and Hunstsville, there were no Hispanics on the board of TBPP or serving as parole commissioners.  This by itself fails to show that TBPP/Owens proffered reason is pretext for discrimination.  Owens had initially appointed two Hispanics to serve as parole commissioners,  but both had resigned by the time Escobedo began applying.  Owens, of course, had no control over their resignation and, in fact, re-appointed one of these Hispanics when he re-applied to TBPP a year later.  Furthermore, Owens was under no legal or other duty to ensure a balanced racial composition of those working at TBPP.  She was obliged  to avoid discriminating against the best candidates on the basis of race.

Escobedo next attempts to demonstrate pretext by arguing that he was clearly better qualified than Thrasher or Fordyce.   When considering qualifications evidence, the courts necessarily must take a step back from the facts and allow leeway for business decisions better made by employers. *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 282 (5th Cir. 1999).  Thus, the standard to show pretext is that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id*. at 280-281.  This is necessarily a high standard to meet.  Escobedo engages in detailed comparison of his career with those of Thrasher and Fordyce.  It is not necessary, however, to calculate precisely who served how many years in each of their respective positions.  The only question before us is whether Owens could reasonably have selected Thrasher and Fordyce above Escobedo.  As discussed above, Thrasher and Fordyce displayed more professionalism and

enthusiasm in their interviews.  They also had current experience with classification systems used in parole decision-making, which Escobedo lacked.

Lastly, both successful candidates had at least ten years of relevant experience, the minimum requirement for the position.  Thrasher had worked as a parole officer, parole analyst, supervisor of parole analysts, and director of administration at TBPP.  Fordyce had worked as director of TDCJ's agricultural division where he selected inmates for work assignments based on the inmate classification system.  It is true Escobedo worked almost ten years on the board of TBPP itself.  Thus, Escobedo was a strong candidate for the position, and was put on the short-list of candidates being interviewed.  But a reasonable person could have selected either Thrasher or Fordyce over Escobedo.  Thus, Escobedo's qualifications argument fails.  In conclusion, then, Escobedo fails to raise a genuine issue of material fact as to pretext, and his claim of racial discrimination fails.

### C.           Retaliation Claim

Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e-3(a).

Plaintiffs with circumstantial evidence of retaliation must also proceed under the *McDonnell Douglas* burden shifting framework.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  Under this framework, Escobedo may create an inference of discrimination by showing (1) that he engaged in an activity protected by Title VII; (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action.  *Id*. at 610; *see also Fierros v. Tex. Dep't of Health*,

274 F.3d 187, 191 (5th Cir. 2001). If the plaintiff is successful, an inference of discrimination is created and the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment decision. If the defendant articulates a legitimate reason, then the inference of discrimination falls away and plaintiff is left with the burden of proving that defendant's articulated legitimate reason was a pretext for retaliation. *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

In determining whether an adverse employment action was taken as a result of retaliation, district courts must focus on the final decision maker. *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted). Any employer action that would be "materially adverse to a reasonable employee or job applicant" satisfies the "adverse employment action" requirement. *Burlington Northern & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2409 (2006).

Escobedo argues Owens retaliated against him for filing a charge of discrimination with the EEOC on July 21, 2005, by selecting Hightower for the parole commissioner position in Gatesville instead of him later that year. The Court assumes *arguendo* that Escobedo has made out his *prima facie* case. The Court decides this case on the issue of whether TBPP/Owen's proffered legitimate non-discriminatory reason was a pretext for retaliation, with the burden of proof resting on Escobedo.

TBPP/Owens proffers the same reasons for preferring Hightower: He demonstrated professionalism and enthusiasm in an earlier interview with Owens (not for the Gatesville position) and he had current experience with TBPP's practice and procedure. Owens adds that she was familiar with Hightower's work ethic from working alongside him on the board.

As discussed above, Escobedo's objections to interview performance (that it was not specific enough) and the current experience criteria (that it was manufactured after the fact) are meritless.  Escobedo adds that Hightower was not interviewed for the Gatesville position so interview performance could not have been a real factor.  Owens, however, did interview Higthower previously and noticed his professionalism and enthusiasm at that point.  Also by the time Escobedo applied for the Gatesville position, Owens had already interviewed him twice.  It is reasonable for the employer to assert as a reason for not selecting the applicant for a current position that he displayed arrogance and insubordination in previous interviews.  Also important is that Hightower was already a current board member who essentially wished to transfer to Gatesville for personal reasons.  Owens granted that request.  Nowhere is there evidence that racial discrimination against Escobedo was a factor in the decision.

Escobedo also repeats the argument that he is clearly better qualified than Hightower.  Specifically, Escobedo insists that Hightower only served four and a half months on the Board compared to Escobedo, who had over nine years of experience.  This comparison is inaccurate.  Hightower's application to the Gatesville position, on which Escobedo relies, shows Hightower had been on the Board since May 4, 2004 and the application is dated September 15, 2005.  Thus, Hightower had served approximately one year and three months.  Furthermore, as explained above, this was more useful experience because it was current with changes that had occurred at TBPP. Finally, like the other two successful candidates, Hightower met the minimum requirements for the position, having worked in the correctional field for over twenty years, and with several years experience as assistant warden and warden of TDCJ facilities.  A reasonable person could have selected Hightower over Escobedo.  Consequently, Escobedo does not raise a

genuine issue of material fact that TBPP/Owens' proffered reasons were a pretext, and his retaliation claim also fails.[1]

## IV.        Conclusion

Escobedo has failed to raise a genuine issue of material fact as to his racial discrimination and retaliation claims under Title VII.  Furthermore, his claims under § 1981 and § 1983 are barred by TBPP/Owens Eleventh Amendment immunity.  The Court need not address the limitation on damages claimed by defendant because there are no meritorious claims on which to recover.  Accordingly, it is hereby

ORDERED that summary judgment in favor of the defendants Texas Board of Pardons and Paroles and Rissie L. Owens as to the racial discrimination claim is GRANTED, and further, it is hereby

ORDERED that summary judgment in favor of defendants Texas Board of Pardons and Paroles and Rissie L. as to the retaliation claim is GRANTED, and further, it is hereby

ORDERED that summary judgment in favor of defendants Texas Board of Pardons and Paroles and Rissie L. Owens as to all § 1981 and § 1983 claims is GRANTED.

---

[1]        Plaintiff raises a number of other arguments, which the Court also finds to be meritless.  Plaintiff argues that the there was insufficient documentation of the proffered reasons before protected activity occurred, indicating pretext.  For this argument, Plaintiff relies on *Evans v. Houston*, 246 F.3d 344, 356 (5th Cir. 2001).  In *Evans*, however, the plaintiff was demoted for alleged disciplinary problems, which the employer failed to document before the plaintiff engaged in protected activity.  As an employer has more cause to document disciplinary problems of a current employee, in order to track their effect on the employer, than the specific reasons why a hiring decision was made, the Court does not find that the same inference as to pretext should be made in this case as in *Evans*.  In a related argument, Plaintiff asserts that the details provided about Thrasher, Fordyce and Hightower only became available to Owens after she selected them as parole commissioners.  A comparison, however, of their affidavits with their job applications reveals no inconsistencies and any omitted details could have been provided at the interview.  Plaintiff contends that a causal nexus is established between the EEOC investigation and the failure to hire Escobedo for the Gatesville position because of temporal proximity, relying again on *Evans*, 246 F. 3d at 354.  This only establishes plaintiff's *prima facie* case, which the Court has assumed in this case, so this point is moot.

SIGNED at Houston, Texas, this 4th day of February, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE